**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | | |
|---|---|---|
| DCM MANUFACTURING, INC.<br><br>Plaintiff<br><br>vs.<br><br>UNITED STATES OF AMERICA; OFFICE OF THE UNITED STATES TRADE; ROBERT E. LIGHTHIZER, U.S. TRADE REPRESENTATIVE; U.S. CUSTOMS AND BORDER PROTECTION; MARK MORGAN, U.S. CUSTOMS AND BORDER PROTECTION ACTING COMMISSIONER<br><br>Defendants. | ) | Court No. 1:20-cv-03449 |

**COMPLAINT**

Plaintiff, DCM Manufacturing, Inc. ("DCM" or the "Plaintiff"), by and through its attorneys, Flannery | Georgalis, LLC, and for its Complaint against the Defendants, hereby alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiff, DCM commences this action to challenge the unlawful additional punitive duties imposed and collected by the Defendants arising from a third tranche of tariffs on certain Chinese-origin goods covered by subheadings of the Harmonized Tariff Schedule of the United States ("HTSUS"), as promulgated by Defendant, Office of United States Trade Representative

("USTR"), and commonly known as "List 3."[1] The Trade Act of 1974 (the "Trade Act")[2] does not authorize the actions taken by USTR with respect to issuance of List 3; specifically, USTR failed to promulgate List 3 in the time prescribed in Section 304 of the Trade Act[3] which requires USTR to determine what action to take, if any, within twelve (12) months after initiation of its investigation of China's unfair acts, policies and practices related to technology transfer and intellectual property, initiated under Section 301 of the Trade Act. Moreover, USTR promulgated List 3 without any further investigation or findings to support such actions.

2. In addition to violations of the Trade Act, the Plaintiff commences this action to also challenge the unlawful additional punitive duties imposed and collected by the Defendants arising from USTR's actions in promulgating List 3, because such actions were arbitrary and, therefore, violate the Administrative Procedure Act (the "APA"), as evidenced by USTR's failure to provide sufficient and meaningful opportunity for public comment, including, without limitation: requiring interested parties to submit affirmative and rebuttal comments on the same day; failing to consider relevant factors when making its decision; not undertaking an analysis of the potential increased burden that would be imposed on U.S. parties and U.S. commerce from the unfair policies and practices that USTR actually investigated; and failing to support its actions with record evidence.

3. As a result of these violations of U.S. law, Plaintiff requests the Court to set aside Defendants' actions as *ultra vires* and otherwise contrary to the law. Additionally, the Court should order Defendants to refund, with interest, all duties paid by the Plaintiff pursuant to List 3

---

[1] *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 FR 47974 (September 21, 2018) and *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 FR 43304 (August 20, 2019), respectively.
[2] 19 U.S.C. § 2101 *et seq*. (as amended).
[3] 19 U.S.C. § 2414.

for which the Plaintiff has not already received or will receive a refund resulting from administrative decisions made by Defendant U.S. Customs and Border Protection ("CBP") to approve any post-summary corrections or protests submitted by the Plaintiff and for which CBP processed (or will process prior to the resolution of this action) refunds of such duties and interest.

**JURISDICTION**

4. The Court has jurisdiction over this action for the reason that the Plaintiff commences it pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers exclusive jurisdiction to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."

**PARTIES**

5. DCM is a privately owned business that manufacturers a complete line of dash fans, heaters, plastic louvers, grills and accessories. DCM was established in 1976.

6. Defendant United States of America received the unlawful additional punitive duties imposed under List 3 and that are at issue in this action and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

7. Defendant Office of USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing appropriate responses to the same, subject to the direction of the President. Relevant to this action, USTR conducted the underlying Section 301 investigation at issue in this action and made decisions and took various actions that culminated in it promulgating List 3.

8. Ambassador Robert E. Lighthizer currently holds the position of USTR and serves as the director of the Office of the USTR. In these capacities, he made decisions and took various actions relating to List 3.

9. Defendant CBP is an executive agency of the United States that collects duties on goods imported into the United States. DCM paid duties to CBP for goods it imported and continues to import into the United States and was and continues to be subject to the unlawful additional punitive duties imposed under List 3 that are at issue in this action.

10. Defendant Mark A. Morgan is the Acting Commissioner of CBP. In this capacity, he oversees CBP's collection of duties, including those paid by DCM on goods it imported and continues to import into the United States that continue to be subject to the unlawful additional punitive duties imposed under List 3 that are at issue in this action.

**STANDING**

11. The Plaintiff has standing to bring this action for the reason it is "adversely affected or aggrieved" by agency action within the meaning of the APA.[4] The tariffs imposed and duties collected by the Defendants pursuant to List 3 have adversely affected and aggrieved the Plaintiff because it was and continues to be required to pay the unlawful additional punitive duties at the time of importation of Chinese-origin goods covered by subheadings of the HTSUS on List 3.

12. Since the purported effective date of the unlawful additional punitive duties imposed on Chinese-origin goods covered subheadings of the HTSUS on List 3, the Plaintiff has imported subject goods such as, without limitation, fans suitable for motor vehicles (8414.59.6540, HTSUS) and parts of fans, including blowers (8414.90.1080, HTSUS), covered by List 3.

[4] 5 U.S.C. § 702; 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5.").

13. As a result of such importations, DCM has been required and continues to pay to the Defendants unlawful additional punitive duties on Chinese-origin goods covered by subheadings of the HTSUS on List 3 in an amount in excess of $900,000.

**TIMELINESS OF THE ACTION**

14. Pursuant to 28 U.S.C. § 2636(i), a party is required to commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues."

15. The unlawful additional punitive duties assessed on Chinese-origin goods that the Plaintiff imported and are covered by subheadings of the HTSUS on List 3 were effective on entries for consumption and withdrawn from warehouse for consumption, on or after September 24, 2018, at the initial rate of 10% *ad valorem*.[5] Effective May 10, 2019, the tariff rate on Chinese-origin goods covered by subheadings of the HTSUS on List 3 was increased to 25% *ad valorem*.[6]

16. This action to challenge the tariffs imposed and duties collected under List 3 is timely for the reason that it is commenced within two (2) years of DCM first paying the unlawful additional punitive duties imposed on Chinese-origin goods covered by subheadings of the HTSUS on List 3. Moreover, this action is timely for the reason that it is filed within two (2) years of USTR publishing List 3 in the *Federal Register*. The Plaintiff's claims accrued no earlier than September 24, 2018 when imports of Chinese-origin goods covered by subheadings of the HTSUS on List 3 were imposed; alternatively the Plaintiff's claims accrued no earlier than September 21, 2018, when USTR published notice of List 3 in the *Federal Register*.

[5] 83 FR 47974.

[6] *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 FR 20459 (May 9, 2019).

## RELEVANT LAW AND PROCEDURAL HISTORY

17. Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices.[7] If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take appropriate action, including, without limitation, imposing tariffs on imports from the country determined to have engaged in the unfair practice.[8]

18. Section 304 of the Trade Act requires USTR to determine what action to take, if any, within twelve (12) months after the *initiation* of the underlying investigation.[9]

19. Section 307 of the Trade Act, in pertinent part, authorizes USTR to modify or terminate an action taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate."[10]

*USTR's Investigation*

20. On August 14, 2017, President Trump directed USTR to consider initiating an investigation pursuant to Section 301(b) of the Trade Act relating to China's laws, policies, practices, and actions related to intellectual property, innovation, and technology.[11]

21. On August 18, 2017, USTR initiated an investigation to determine whether the acts, policies, and practices of the Government of China relating to technology transfer, intellectual property, and innovation were actionable under Section 301(b) of the Trade Act.[12]

---

[7] 19 U.S.C. § 2411(b).
[8] *Id.* § 2411(b), (c)(1)(B).
[9] *Id.* § 2414(a)(1)(B), (2)(B).
[10] *Id.* § 2417(a)(1)(B), (C).
[11] *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 FR 39007 (Aug. 17, 2017).
[12] *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 FR 40213 (Aug. 24, 2017).

22. In March 2018, USTR published its report relating to said investigation.[13] USTR concluded that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce."[14]

23. In the *Section 301 Report*, USTR set forth several findings in support of its conclusion but did not quantify the burden or restriction imposed on U.S. commerce by the practices it investigated.

24. Instead, USTR published a "Fact Sheet" stating that an interagency team of experts and economists estimated that China's unfair practices and policies harm the U.S. economy of at least $50 billion per year.[15] In light of its findings in the investigation, USTR further stated that it would propose additional tariffs of 25% *ad valorem* on certain goods of Chinese-origin, having an annual trade value commensurate with the harm caused to the U.S. economy.[16]

*List 1 and 2*

25. From the time USTR released the *Section 301 Report* through August 2018, consistent with the 12-month deadline from the initiation of the investigation in August 2017, as prescribed by law,[17] USTR implemented various actions to address the estimated harm to the U.S. economy caused by the investigated unfair practices, culminating in promulgating additional

---

[13] OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018), *available at* https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF (the "*Section 301 Report*").
[14] *Id.* at 17.
[15] OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about- us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet.
[16] *Id.*; see *Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 FR 13099 (March 27, 2018).
[17] 19 U.S.C. § 2414(a)(2)(B)).

punitive duties on certain Chinese-origin goods imported into the United States covered by subheadings of the HTSUS and set forth on certain lists, commonly known as "List 1" and "List 2."

26. On April 6, 2018, USTR published notice of its intent to impose an additional duty of 25% *ad valorem* on certain goods of Chinese-origin, covered by more than 1,300 subheadings of the HTSUS, having approximately $50 billion in estimated annual trade value for 2018,[18] an amount USTR determined was commensurate with an analysis of the estimated harm to the U.S. economy caused by China's unreasonable technology transfer policies, as covered by USTR's Section 301 investigation.[19]

27. On June 20, 2018, USTR published notice of its final list of Chinese-origin goods subject to an additional punitive duty of 25% *ad valorem*, which became commonly known as "List 1."[20] List 1 contained 818 subheadings of the HTSUS and USTR explained that the products covered had an approximate annual trade value of $34 billion.[21]

28. In addition, USTR announced that it intended to impose a 25% *ad valorem* punitive duty on a second proposed list of Chinese-origin goods covered by 284 subheadings of the HTSUS and having an approximate annual trade value of $16 billion, which USTR stated would maintain

[18] *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 FR 14906-07 (April 6, 2018).
[19] OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products (Apr. 3, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301- action-ustr.
[20] *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 FR 28710 (June 20, 2018).
[21] *Id.* at 28711.

the United States' effectiveness of a $50 billion trade remedy action supported by the *Section 301 Report*.[22] This second proposed list became commonly known as "List 2."

29. On August 16, 2018, a day within the 12-month period prescribed by law for USTR to take action after initiation of its Section 301 investigation, USTR published notice of the final list of Chinese-origin goods subject to an additional punitive duty of 25% *ad valorem* on List 2, consisting of 279 subheadings of the HTSUS, having an estimated annual trade value of $16 billion.[23]

<u>*List 3*</u>

30. Subsequent to USTR's promulgation of List 1 and List 2, having a combined annual trade value of $50 billion and being commensurate with the above-referenced interagency analysis of harm to the U.S. economy due to the unfair trade practices of China, without further investigation or additional analysis of the estimated harm to the U.S. economy, USTR took actions to promulgate additional tariffs purportedly under authority of Section 301 of the Trade Act to cover imports of Chinese-origin goods having an estimated annual trade value of $500 billion – ten (10) times the amount USTR had deemed to be the estimated harm to the U.S. economy.

31. On or about June 18, 2018, President Trump formally directed USTR to consider whether the United States should impose *additional* duties on Chinese-origin goods with an estimated annual trade value of $200 billion for reasons unrelated to the findings set forth in the *Section 301 Report* and not commensurate with the estimated harm to the U.S. economy.[24]

---

[22] *Id.* at 28711-12.

[23] *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 FR 40823, 40823-24 (August 16, 2018).

[24] THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/.

32. Acting in accordance with the President's directive, USTR announced that it would propose additional duties to address China's threatened retaliatory measures, but did not announce that it would further investigate China's acts, policies, and practices, or that USTR had determined the harm to the U.S. economy was more significant than the initially reported estimated harm of $50 billion.[25]

33. Subsequently, on July 17, 2018, shortly after an additional punitive duty of 25% *ad valorem* was imposed on Chinese-origin goods covered by subheadings of the HTSUS on List 1, USTR published notice of its proposed action to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action . . . [to impose] an additional 10 percent *ad valorem* duty. . ." on Chinese-origin goods covered by additional subheadings of the HTSUS, stated to have an annual trade value of approximately $200 billion. In doing so, USTR purportedly relied on Section 307(a)(1)(C) of the Trade Act as the legal authority by which it could impose the *additional* punitive duties promulgated under Section 301 of the Trade Act.[26] Initially, USTR set a deadline of August 17, 2018 for interested parties to submit comments on the proposed additional tariffs; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments.[27]

[25] OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, USTR Robert Lighthizer Statement on the President's Additional China Trade Action (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses.").

[26] *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 FR 33608 (July 17, 2018).

[27] *Id*.

34. In a *Federal Register* notice published on July 17, 2018, USTR stated the basis for the proposed imposition of the additional tariffs on Chinese-origin goods having an annual trade value of approximately $200 billion was China's decision to impose countermeasure tariffs or so-called "retaliatory duties" on U.S.-origin goods, not because of a further investigation or revised determination of the harm to the U.S. economy due to findings made in the *Section 301 Report*.[28]

35. Subsequently, USTR, at the direction of President Trump, formally proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent."[29] Significantly, USTR also set new dates for the submission of written comments, setting September 6, 2018 – less than one (1) month later - as the deadline for both *initial and rebuttal* public comments from the public, and holding a public hearing over six (6) days ending on August 27, 2018, limiting testimony from each witness to a scant five (5) minutes.[30]

36. By compressing the deadline for submitting public comments, requiring initial and rebuttal comments to be submitted on the same day, and limiting the time for testimony, USTR departed from its past practices and effectively deprived interested parties of meaningful opportunities to be heard on the proposed additional round of tariffs.

37. Despite USTR's actions to effectively deprive interested parties of a meaningful opportunity to respond to the proposed additional round of tariffs, approximately 350 witnesses appeared at the six-day hearing, and interested parties submitted over 6,000 comments.[31]

---

[28] *Id.*, 33609.

[29] *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 FR 38760 (August 7, 2018).

[30] *Id.*, 38761; Docket No. USTR-2018-0026, *available at* https://beta.regulations.gov/document/USTR-2018-0026-0001.

[31] Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001.

38. Subsequently, USTR published notice of the final list of certain goods of Chinese-origin, covered by additional subheadings of the HTSUS, subject to an additional punitive duty, a list commonly known as "List 3."[32] USTR imposed a 10% *ad valorem* tariff that was set to rise automatically to 25% on January 1, 2019, with the additional duties promulgated under List 3 applying to Chinese-origin goods covered by listed subheadings of the HTSUS entering the United States on or after September 24, 2018. Significantly, prior to taking this action USTR did not respond to any of the over 6,000 comments that it received or address any of the testimony given by approximately 350 witnesses over six (6) days of the public hearing.[33]

39. As the purported legal support for its action, USTR cited Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased."[34] USTR further stated that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies."[35] USTR also cited Section 307(a)(1)(C) of the Trade Act, stating that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action

---

[32] *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 FR 47974 (September 21, 2018).
[33] *Id.*
[34] *Id.* (brackets omitted).
[35] *Id.*

by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China."[36]

40. Ultimately, in May 2019, USTR announced its intent to raise the tariff rate Chinese-origin goods covered by the HTSUS subheadings on List 3 to 25%, *ad valorem*, effective either May 10, 2019 or June 1, 2019, depending on the day of export.[37] USTR did not base the proposed increase on new findings with respect to China's acts, policies, and practices related to technology transfer, intellectual property, or innovation or a revised determination of the harm to the U.S. economy as a result of such acts, policies, and practices. Rather, USTR cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate.[38] Significantly, USTR failed to request public comment on the proposed increase, departing from its prior practice to do so.[39]

41. As was done with List 1 and List 2, USTR invited the public to seek exclusions from the tariff imposed on Chinese-origin goods covered by subheadings of the HTSUS on List 3 on a product-specific basis.[40]

42. The unlawful additional punitive duties imposed on Chinese-origin goods covered by the subheadings of the HTSUS on List 3 remain in effect as of the date of this Complaint, except

---

[36] *Id.*, 47975.

[37] *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 FR 20459 (May 9, 2019) ("*List 3 Rate Increase Notice*"); see also *Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 FR 21892 (May 15, 2019).

[38] *List 3 Rate Increase Notice*, 84 FR 20459.

[39] *Id.*

[40] *Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 FR 29576 (June 24, 2019).

for those limited number of products for which USTR has extended exclusions which it originally granted.

**STATEMENT OF CLAIMS**

**COUNT ONE**
**(DECLARATORY JUDGMENT - VIOLATION OF THE TRADE ACT OF 1974)**

43. The Plaintiff realleges and incorporate by reference Paragraphs 1 through 42 of the Complaint as if fully rewritten herein.

44. The Declaratory Judgment Act provides an additional remedy where jurisdiction exists on other grounds and authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[41] Such an additional remedy is sought and warranted in this action.

45. The Trade Act of 1974 does not authorize the actions taken by USTR that culminated in its promulgation of the unlawful additional punitive duties imposed on Chinese-origin goods covered by subheadings of the HTSUS on List 3.

46. Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate."[42] USTR failed to support its actions culminating in promulgating List 3 with any such determinations.

47. If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated."[43] As detailed above,

[41] 28 U.S.C. § 2201(a).
[42] 19 U.S.C. § 2411(b).
[43] 19 U.S.C. § 2414(a)(1)(B), (2)(B).

USTR's actions culminating in promulgating List 3 were taken more than twelve (12) months after USTR initiated the underlying Section 301 investigation on August 18, 2017.

48. Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases.[44] Section 307 of the Trade Act, however, does not authorize USTR to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act. Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate."[45] Section 307 of the Trade Act, however, does not authorize USTR to escalate tariff actions that are no longer "appropriate," as its authority is limited only to the delay, taper, or termination of such actions.

49. As USTR has exceeded the authority granted to it under the Trade Act, Plaintiff is entitled to a declaratory judgment that USTR's actions culminating in promulgating List 3 are *ultra vires* and contrary to law and, in turn, the remaining Defendants' actions relating to the unlawful additional punitive duties imposed and collected under List 3 are, likewise, *ultra vires* and contrary to law.

**COUNT TWO**
**(VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)**

50. Plaintiff realleges and incorporates by reference Paragraphs 1 through 49 of the Complaint as if fully rewritten herein.

---

[44] 19 U.S.C. § 2417(a)(1)(B).
[45] 19 U.S.C. § 2417(a)(1)(C).

51. The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence."[46]

52. USTR exceeded its authority under the Trade Act in promulgating List 3 and, accordingly, acted not in accordance with the law and in excess of statutory authority as set forth in Count One and, in turn, the remaining Defendants' actions relating to the unlawful additional punitive duties imposed and collected under List 3 are, likewise, not in accordance with the law and in excess of statutory authority, as set forth in Count One.

53. USTR failed to offer any record evidence for the asserted "increased burden" from China's acts, policies, and practices that were the subject of USTR's Section 301 investigation and resulting *Section 301 Report*.

54. USTR's actions culminating in promulgating List 3 were arbitrary and capricious because they did not provide a sufficient and meaningful opportunity for interested parties to submit comments; failed to meaningfully consider relevant factors when making its decisions, and failed to adequately explain the rationale and support its decisions with record evidence. As such, USTR's flawed rulemaking process violated the APA and resulted in the unlawful imposition of additional punitive duties on Chinese-origin goods covered by subheadings of the HTSUS on List 3.

[46] 5 U.S.C. § 706(2).

**PRAYER FOR RELIEF**

Wherefore, Plaintiff, DCM Manufacturing, Inc., respectfully request that the Court:

(i) declare that the Defendants' actions resulting in unlawful additional punitive duties tariffs on products covered by subheadings of the HTSUS on List 3 to be unauthorized by and contrary to the Trade Act;

(ii) declare that Defendants arbitrarily and unlawfully promulgated List 3 in violation of the APA;

(iii) vacate the List 3 rulemaking;

(iv) order Defendant CBP to refund, with interest, all duties paid by Plaintiff pursuant to List 3;

(v) permanently enjoin Defendants from applying the unlawful additional punitive duties covered by subheadings of the HTSUS on List 3 against Plaintiff and collecting any duties from Plaintiff pursuant to List 3;

(vi) award Plaintiff costs and reasonable attorney fees; and

(vii) grant such other and further relief the Court deems proper.

/s/ *Jon P. Yormick*
Jon P. Yormick
*Attorney for Plaintiff DCM Manufacturing Inc.*
**FLANNERY | GEORGALIS, LLC**
1375 E. 9th St., 30th Floor
Cleveland, OH 44114
T: 216.928.3474
M: 216.269.5138
E: jyormick@flannerygeorgalis.com

Dated: September 21, 2020

**CERTIFICATE OF SERVICE**

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on September 21, 2020, copies of Plaintiff's Summons and Complaint were served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

General Counsel Joseph L. Barloon
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20006

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

*/s/ Jon P. Yormick*
Jon P. Yormick